CHIN and CARNEY, *Senior Circuit Judges*, in support of the denial of rehearing en banc:

As members of the two-judge panel that decided the case, we fully support the Court's denial of the petition for rehearing en banc.[1] The panel decision was correct, *see Black v. Decker*, 103 F.4th 133 (2d Cir. 2024) ("*Black*"), and the criteria for en banc rehearing have not been met. Fed. R. App. P. 40(b)(2). We write to address the arguments made by our two colleagues who have filed dissents from the Court's denial of en banc review.

The panel concluded that the detentions of two noncitizens under 8 U.S.C. § 1226(c) for a prolonged period without any bond hearing violated the noncitizens' Fifth Amendment due process rights.[2] In so holding, we affirmed the ruling of one district court and reversed the ruling of another. A district court granted habeas relief to Black, ordering that a bond hearing be conducted after he had been detained for almost 8 months. Black prevailed at that bond hearing, posted bond, and was released. The government appealed. Another district court denied habeas relief to G.M., who by then had been detained without a bond hearing for almost 14 months, and G.M. appealed. (He was later released, after 21

---

[1] As senior judges, we have no vote on whether to rehear a case en banc. *See* 28 U.S.C. § 46(c); Fed. R. App. P. 40(c). Pursuant to this Court's protocols, however, senior judges who were members of the panel deciding the case that is subject to the en banc petition may file a statement expressing their views where, as here, an active judge has filed a dissent from the denial of a petition for rehearing en banc.

[2] Judge Rosemary Pooler was a member of the panel and joined Judges Chin and Carney in voting for the result reflected in the published opinion. She died, however, before the opinion was issued.

months' detention, in circumstances related to the Covid pandemic. He never received a bond hearing.)

On appeal, we applied the three-factor balancing test provided by *Mathews v. Eldridge*, 424 U.S. 319 (1976), to examine Black's and G.M.'s individual circumstances. Based on that exercise, we held in each case that detention had become unreasonably prolonged and that due process therefore entitled each to a bond hearing.[3] We further concluded, again guided by *Mathews*, that at such a bond hearing, due process demanded that the government bear the burden to justify, by clear and convincing evidence, their continued detentions. In so holding, we joined the Third Circuit, the only other Circuit to address what bond hearing procedures are constitutionally required to remedy unreasonably prolonged detention under § 1226(c). *See German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020).

We write separately to respond in more detail to several arguments raised now by our dissenting colleagues.

First, we address Judge Menashi's accusation that the panel "invalidated" § 1226(c). Menashi Dissent at 2. He is incorrect. Far from "invalidating" § 1226(c), *id.*, and upending its "policy of mandatory detention," *id.* at 12, the *Black* panel held that, as a remedy for an as-applied challenge to unreasonably prolonged detention, a district court properly ordered the government to justify an

---

[3] The three *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

individual petitioner's *continued § 1226(c) detention* at a bond hearing. Judge Menashi's misreading of what the panel held unfortunately pervades the whole of his dissent. Further, and importantly, under Judge Menashi's interpretation of the law, no individual could *ever* challenge his or her detention under § 1226(c), even if the detention became indefinite or, worse, permanent. Absent a court's imposition of a life sentence for a criminal conviction, due process does not permit such a result.

Next, Judge Nardini takes issue with our conclusion, which was guided by *Mathews*, that at such a bond hearing, due process demands that the government bear the burden to justify by clear and convincing evidence detainees' continued detentions.[4] Judge Nardini urges that, where detention under § 1226(c) is "unreasonably prolonged" such that due process entitles a detainee to a remedial bond hearing, the detainee must bear the burden of proof to justify release by a preponderance of the evidence. Yet, his arguments rely primarily on caselaw analyzing a *different* provision—8 U.S.C. § 1226(a)—which, as we explain further below, creates a different detention regime. Judge Nardini has identified no case (and we are aware of none) in which any Circuit has determined that a bond hearing using the burden allocation he proposes was deemed an adequate remedy for unreasonably prolonged detention under either § 1226(a) or § 1226(c). And meanwhile, the Third Circuit's holding in *German Santos* is wholly in accord with our ruling. On our reading, rehearing this case en banc and deciding as Judge Nardini suggests would not help to resolve any Circuit split; rather, to

---

[4] As we explained in *Black*, the panel reached the issue of the burden allocation at the hearing ordered for Black only. *See Black*, 103 F.4th at 155 & n.27.

adopt his position would be to create a Circuit split.

To address the dissents' arguments, we discuss below the statutory scheme governing immigration detention under § 1226; the Supreme Court's guidance on these topics; our Court's approach to resolving the questions left open by the Supreme Court; and Judge Menashi's misinterpretation of Supreme Court precedent and of our panel's holding. We further discuss other Circuits' caselaw concerning § 1226(a) and § 1226(c), and explain why, contrary to Judge Nardini's misapprehensions, there is no Circuit split that reconsidering *Black* would help resolve.

## I.      Applicable law

### A. Statutory background

Section 1226 contains two relevant subsections, (a) and (c), which establish different regimes for the government's detention of noncitizens whom it charges with removability. Section 1226(a) authorizes the government to detain a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). As the Supreme Court explained in *Jennings v. Rodriguez*, "Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien" pending a removal decision, and "'may release' an alien detained under § 1226(a) 'on . . . bond' or 'conditional parole.'" 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1226(a)). As discussed further in Section IV.A. below, § 1226(a) detainees are afforded multiple opportunities to challenge their detention: at the point of arrest, at multiple bond hearings, and on appeal. Notably, § 1226(a) detainees receive an

initial bond hearing when first detained, and, under BIA precedent, they bear the burden of justifying their release at that initial hearing.

In contrast, § 1226(c) provides that the government "shall take into custody" noncitizens whom it charges with removability based on certain specific prior criminal convictions and makes no provision at all for a bond hearing, at any point.[5] Section 1226(c) detainees have no express statutory or regulatory rights at all to a bond hearing at any point in their detention. They have only the hearing that we have now ordered in *Black*, and that is available to them only after a judge has found, based on their individual circumstances, that their detention has become unreasonably prolonged.

## B. The Supreme Court's guidance

It is well settled that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). As the Supreme Court has recently reiterated, "'the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507

---

[5] Following a January 2025 amendment, § 1226(c) mandatory detention covers any noncitizen who, *inter alia*, "is *charged* with, is *arrested* for, is convicted of, *admits having committed*, or *admits committing acts* which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E)(ii) (emphasis added). The amended § 1226(c) also subjects to mandatory detention those who are charged with inadmissibility on the ground that they are present in the United States "without being admitted or paroled," "misrepresent[ed] a material fact" as part of an application for admission or for a visa or benefit, or lack the necessary documentation at the time they apply for admission. 8 U.S.C. § 1182(a)(6)(A), (6)(C), (7); *id.* § 1226(c)(1)(E)(i).

U.S. 292, 306 (1993)). The Supreme Court has also made clear that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

Immigration detention, like all forms of civil detention, must be "nonpunitive in purpose and effect." *Id*. It also must be necessary to prevent against a risk of flight or danger to the community. *See id*. Due process thus requires "adequate procedural protections" to ensure that a noncitizen's immigration detention remains necessary to serve a permissible government purpose. *Id*. And in the context of preventive civil detention, the most fundamental due process protection is an individualized hearing, before a neutral decisionmaker, to justify government detention. *See, e.g.*, *Schall v. Martin*, 467 U.S. 253, 270 (1984); *United States v. Salerno*, 481 U.S. 739, 750 (1987); *Kansas v. Hendricks*, 521 U.S. 346, 357–58 (1997).

Section 1226(c) is an outlier among comparable civil detention regimes. While other types of civil detention generally require a bond hearing near the outset of detention, *see, e.g.*, *Salerno*, 481 U.S. at 750, § 1226(c) makes no express provision for a bond hearing.

The Supreme Court has never directly addressed whether prolonged detention without a bond hearing will *at some point* violate a detainee's due process rights, nor what bond procedures would be constitutionally required to remedy unreasonably prolonged detention under § 1226(a) or § 1226(c). The groundwork, however, was laid in 2001, in *Zadvydas v. Davis*, 533 U.S. 678 (2001). There, the Supreme Court addressed whether a different detention statute—8

U.S.C. § 1231(a)(6)—authorized indefinite detention.[6] Resolving only the statutory challenge, the *Zadvydas* Court determined that the statute would raise "serious constitutional concerns" if it did permit indefinite detention. 533 U.S. at 682. The Court also held that the government's existing custody-review processes were deficient because they placed on the detainee "the burden of proving he is not dangerous." *Id.* at 692. Accordingly, the Court "construe[d] the statute to contain an implicit 'reasonable time' limitation" of six months, when, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must either rebut that showing or release the noncitizen. *Id.* at 682, 701.

Two years later, in *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court upheld the constitutionality of § 1226(c) against a facial challenge, resting on the purportedly "*brief* period necessary for [§ 1226(c) detainees'] removal proceedings." *Id.* at 513 (emphasis added). This was a facial challenge because the petitioner was not challenging the statute based on his individual circumstances, but instead, based on the statute's lack of provision for an initial bond hearing. *See id.* at 516–17 ("But respondent does not challenge a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release. Rather, respondent challenges the statutory framework that permits his detention without bail."). Relying on statistics provided by the government, the Court

---

[6] Section 1231(a)(6) provides that certain noncitizens who are ordered removed "may be detained beyond the [90-day] removal period and, if released, shall be subject to [certain] terms of supervision." 8 U.S.C. § 1231(a)(6).

wrote that the "detention at stake . . . lasts roughly a month and a half in the vast majority of cases . . . and about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 530. The Supreme Court assumed that the circumstances of the habeas petitioner, Hyung Joon Kim, who had been detained for six months, were not typical. *See id.* at 530–31.[7]

In 2018, the Supreme Court in *Jennings v. Rodriguez* decided that, as a matter of statutory interpretation, neither § 1226(a) nor § 1226(c) contains implicit six-month limitations on detention absent a bond hearing. 583 U.S. 281, 296, 303–04 (2018). *Jennings* also ruled that § 1226(a), by its own terms, does not mandate that a clear and convincing evidence burden be placed on the government in bond hearings. The *Jennings* majority took no position on whether the Due Process Clause places any procedural limit on detention, reserving the constitutional claims for remand. *See id.* at 312.

In sum, *Zadvydas*, *Demore*, and *Jennings* left open the question whether prolonged detention without a bond hearing will *at some point* violate a detainee's due process rights.

---

[7] As we explain in the panel opinion, *see Black*, 103 F.4th at 144 n.14, the government later disclosed that the statistics on which the Supreme Court relied in *Demore* contained several significant errors. Letter from Ian Heath Gershengorn, Acting Solicitor Gen., to Scott S. Harris, Clerk, Supreme Ct. of the U.S. at 2 (Aug. 26, 2016), *available at* https://on.wsj.com/2sUWIGk [https://perma.cc/U3KR-C56W]. Contrary to the *Demore* Court's understanding that § 1226(c) detention averaged 5 months when detainees appealed to the BIA, the government clarified that the actual average was over 12 months. Gershengorn Letter at 3. Kim's 6-month detention was not, therefore, an outlier, but rather fell within the 80% of cases in which § 1226(c) detainees who appealed to the BIA were detained for at least 6 months. And even the updated data in the Gershengorn Letter contained acknowledged weaknesses growing from its inadequate definition of case "completions." *See id.* at 2–3.

### C. Our Court's approach

In *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020), we addressed the government's discretionary detention authority under § 1226(a). Three and one-half months after Velasco Lopez was first detained under § 1226(a), he had an initial bond hearing. There, he failed to carry his burden of proving that he was neither a flight risk nor dangerous. *See id.* at 847, 849. He had another bond hearing five months after the first, again failing to meet the burden of proof. *See id.* at 847. After fourteen months in detention, Velasco Lopez filed a habeas petition alleging a violation of due process. The district court granted his petition and ordered a new hearing at which the government was required to justify his continued incarceration by presenting clear and convincing evidence that he was either a flight risk or a danger to the community. *See id.* at 847–48. At the hearing, the immigration judge ("IJ") concluded that the government failed to carry its burden, and ordered Velasco Lopez released on a $10,000 bond, which he posted.

On appeal, this Court held that "Velasco Lopez's prolonged incarceration, which had continued for fifteen months without an end in sight or a determination that he was a danger or flight risk, violated due process." *Id.* at 855. We went on to rule that, to address this due process violation, the district court properly ordered a new hearing at which the government bore the burden to show dangerousness and flight risk by clear and convincing evidence. *Id.* at 855–57. In so ruling, we did not take issue with the burden allocation at the *initial*, statutorily required § 1226(a) bond hearings—where noncitizens bear the burden of proof—but explained that "'as the period of . . . confinement grows,' so do the required procedural protections no matter what level of due process may

have been sufficient at the moment of initial detention." *Id.* at 853 (quoting *Zadvydas*, 533 U.S. at 701). "While the Government's interest may have initially outweighed short-term deprivation of Velasco Lopez's liberty interests, that balance shifted once his imprisonment became unduly prolonged." *Id.* at 855. Our Court concluded that the clear and convincing standard was appropriate to apply, reasoning that "[t]he Supreme Court has consistently held the Government to a standard of proof higher than a preponderance of the evidence where liberty is at stake, and has reaffirmed the clear and convincing standard for various types of civil detention." *Id.* at 856 (footnote omitted).[8]

## II.     The *Black* Panel decision

In *Black*, we evaluated petitioners Black and G.M.'s due process challenges under the three *Mathews* factors and found that all three weighed in favor of allowing each petitioner a bond hearing. *First*, they had a weighty "private interest" in being free from imprisonment. *Black*, 103 F.4th at 151–52. *Second*, it was not a "risk," but a virtual certainty, that the minimal procedures under § 1226(c) had led to "unwarranted detention" for Black. *Id.* at 153. Black had led a peaceful life since his criminal conviction in March 2000, 19 years before his arrest under § 1226(c), and at the bond hearing ordered by the district court, the government could not justify his continued detention. *Id.* G.M.'s circumstances similarly "suggest[ed] a high likelihood that he was subject to an erroneous deprivation of liberty." *Id.* *Third*, while the government's legitimate interests in

---

[8] In *Velasco Lopez*, we cited, *inter alia*, *United States v. Comstock*, 560 U.S. 126 (2010), *Foucha v. Louisiana*, 504 U.S. 71 (1992), and *United States v. Salerno*, 481 U.S. 739 (1987). *See* 978 F.3d at 856. We relied on these same authorities in *Black*. *See* 103 F.4th at 157–58.

detaining certain individuals justify a relatively short-term deprivation of liberty, *see Demore*, 538 U.S. at 513, "the balance of interests shifts as the noncitizen's detention is prolonged without any particularized assessment of need," *Black*, 103 F.4th at 154. Accordingly, due process entitled Black and G.M. to individualized bond hearings once their detentions became unreasonably prolonged.

We also concluded that the district court correctly determined that, at Black's bond hearing, due process required the government to bear the burden of proof by clear and convincing evidence. We observed that "proving a negative (especially a lack of danger) can often be more difficult than proving a cause for concern. Requiring detainees like Black to prove that they are *not* a danger and *not* a flight risk—after the government has enjoyed a presumption that detention is necessary—presents too great a risk of an erroneous deprivation of liberty after a detention that has already been unreasonably prolonged." *Id.* at 156 (internal quotation marks and citations omitted). As in *Velasco Lopez*, the clear and convincing standard was appropriate in light of the liberty interests at stake.

## III.  Judge Menashi's dissent

Judge Menashi urges a far different interpretation of the Supreme Court's precedents, relying on the Eighth Circuit's recent, post-*Black* decision in *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024). But *Banyee* is under-reasoned and deeply flawed, and it is an outlier among the relevant decisions of our Sister Circuits.

Petitioner Banyee, a lawful permanent resident, had been detained under § 1226(c) for over twelve months when a district court granted his habeas petition challenging his prolonged detention. *Nyynkpao B. v. Garland*, No. 21-CV-

11

1817, 2022 WL 1115452, at *3, *6 (D. Minn. Apr. 14, 2022). The district court carefully considered the factors outlined in *Muse v. Sessions*, 409 F. Supp. 3d 707 (D. Minn. 2018), and ordered relief in the form of a bond hearing at which the government would bear the burden to justify continued detention. *Nyynkpao B.*, 2022 WL 1115452, at *6. At that bond hearing, the immigration judge held that the government had not met its burden and thus ordered Banyee released on bond.

The Eighth Circuit reversed, holding that "[t]he rule has been clear for decades" (since *Demore* in 2003) that due process placed no time limit on detention under § 1226(c) without a bond hearing. *Banyee*, 115 F.4th at 931. According to the *Banyee* panel, the Supreme Court definitively foreclosed individual as-applied challenges to prolonged detention under § 1226(c), and established a "bright-line rule" that "the government can detain an alien for as long as deportation proceedings are still pending." *Id.* at 933 (internal quotation marks omitted). The *Banyee* panel further concluded that *Zadvydas* and *Demore* "leave no room for a multi-factor 'reasonableness' test" in evaluating a § 1226(c) detention because the Supreme Court has "already done whatever balancing is necessary" in opting for its purported "bright-line rule." *Id.*[9]

*Banyee*'s claimed "bright-line rule" runs headlong, however, into the Supreme Court's actual rulings as well as the government's consistent representations to the Court in the decades since *Demore*. As discussed, *Demore*

---

[9] Banyee petitioned for rehearing en banc, which was denied by a 6-5 vote of the Eighth Circuit's active judges. *Banyee v. Bondi*, 131 F.4th 823 (8th Cir. 2025). As the dissent from the denial of rehearing en banc in that case argues, the *Banyee* panel "attributes to the Supreme Court a much broader decision that it has not rendered." *Id.* at 831 (Colloton, J., dissenting from denial of rehearing en banc).

rejected a facial challenge to mandatory detention under § 1226(c). Yet, according to *Banyee* and Judge Menashi, the Supreme Court went far beyond rejecting that facial challenge to establish its "bright-line rule" and left no room for *as-applied* challenges to prolonged detention. Menashi Dissent at 2 (quoting *Banyee*, 115 F.4th at 933). But the government did not take that position in *Demore*. It urged instead that, although Kim's facial challenge failed (in its view), as-applied due process challenges to prolonged detention under § 1226(c) are proper and viable.[10]

Nor has the government adopted Judge Menashi's reading of the Supreme Court's precedents in the decades since *Demore*. In its brief to the Supreme Court in *Jennings*, the government explained that "[t]he proper avenue for presenting a claim that detention under Section 1226(c) has become impermissibly prolonged is therefore through an as-applied constitutional challenge in an individual

---

[10] Petitioners' Br., *Demore v. Kim*, 2002 WL 31016560, at *48–*49 ("The mandatory detention provisions of Section 1226(c) are constitutional in the ordinary case, and exceptional circumstances that present special due process concerns can be addressed on a case-by-case basis."); Transcript of Oral Argument at 56, *Demore v. Kim*, 538 U.S. 510 (2003) (No. 01-1491) (The solicitor general, in rebuttal, stating, "[I]f there's some question about an aberrational lengthy detention, that should be brought to this Court or the courts below in an as-applied challenge."). This position comports with the long-established differences between facial and as-applied challenges: "a statute, even if not void on its face, may be challenged because invalid as applied," *Whitney v. California*, 274 U.S. 357, 378 (1927) (Brandeis, *J.*, concurring), and "[a] statute may be invalid as applied to one state of facts and yet valid as applied to another," *Dahnke-Walker Milling Co. v. Bondurant*, 257 U.S. 282, 289 (1921). *See also Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87, 91 n.6, 102 (1982) (approving district court's analysis that because application of law requiring financial disclosure was invalid as applied, court need not address alleged facial invalidity of the statute); *Rice v. Norman Williams Co.*, 458 U.S. 654, 662 n.7 (1982) (mere fact that statute "might have an anticompetitive effect when applied in concrete factual situations" does not render it void on its face). "It should be elementary that a decision rejecting a facial challenge means only that the statute is constitutional in at least some of its applications." *Banyee*, 131 F.4th at 831 (Colloton, *J.*, dissenting from denial of rehearing en banc).

habeas corpus proceeding." Petitioners' Br., *Jennings v. Rodriguez*, 2016 WL 5404637, at \*46–47 (citation omitted); Transcript of Oral Argument at 67, *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) (No. 15-1204) ("[T]he position of the government is that that individual [detained for years without a bond hearing] would have an individualized as-applied challenge in a habeas proceeding[.]"). In fact, the government argued that "*Demore* provides guideposts for evaluating such [as-applied] challenge[s]," Petitioners' Br., *Jennings v. Rodriguez*, 2016 WL 5404637, at \*47, because *Demore* focused on the "*brief* period" that, as the government represented at the time, was necessary for removal proceedings, *Demore*, 538 U.S. at 513 (emphasis added). As the government explained, *Demore* counsels that the length of a detention can bear on the constitutionality of even a mandatory detention: "because longer detention imposes a greater imposition on an individual, as the passage of time increases a court may scrutinize the fit between the means and the ends more closely." Petitioners' Br., *Jennings v. Rodriguez*, 2016 WL 5404637, at \*47.[11]

For the same reasons, the government in *Banyee* specifically declined to urge the rule adopted by the *Banyee* panel. As the government there recognized, "The Supreme Court has not yet decided whether due process might prohibit the continued application of section 1226(c) in individual extraordinary circumstances," Appellants' Br. at 20, *Banyee*, No. 22-2252 (8th Cir. Dec. 19, 2022), and "there may be cases in which continued detention without a bond hearing

---

[11] Likewise, the government conceded in *Demore* that "the duration of detention . . . is another factor bearing upon its constitutionality, because prolonged detention imposes a greater burden upon the [noncitizen.]" Petitioners' Br., *Demore v. Kim*, 2002 WL 31016560, at \*48 (citing *Zadvydas*, 533 U.S. at 688–701).

14

under section 1226(c) may be unconstitutional," Appellants' Reply Br. at 6, *Banyee*, No. 22-2252 (8th Cir. June 14, 2022). The government contended, however, that Banyee's claim failed simply because he "has not pointed to any extraordinary circumstances that would warrant such a conclusion here." *Id*.[12]

In addition to misapprehending *Demore*'s rejection of a facial challenge as foreclosing as-applied challenges, Judge Menashi makes the reverse mistake regarding the *Black* panel opinion, claiming that *Black* "invalidated" § 1226(c) altogether by inviting as-applied challenges in the form of bond hearings. Menashi Dissent at 2, 12. One need only review the panel opinion to see that it did not "invalidate" § 1226(c)'s mandatory detention scheme.[13] To the contrary, it held that § 1226(c) had been used unconstitutionally in two, individual cases of excessively prolonged detention, leaving untouched the vast majority of § 1226(c)'s lawful applications. Nothing about this limited holding constitutes an "invalidation" of anything.

---

[12] That *Banyee* was wrongly decided—and that Judge Menashi's reliance on *Banyee* is therefore misguided—is further clarified by the government's subsequent efforts to cabin *Banyee*'s analysis. In its opposition to the petition for rehearing en banc in *Banyee*, the government argued that *Banyee* "should not be read as ruling out as-applied challenges to section 1226(c) detention or suggesting that due process imposes no constraints on prolonged mandatory detention." Opp. to Petition for Rehearing En Banc at 10, *Banyee*, No. 22-2252 (8th Cir. Jan. 23, 2025). And in its petition for rehearing en banc here, the government reiterated that *Demore* and *Jennings* recognized the need for individualized, case-by-case consideration of whether a person's prolonged detention is necessary. *See* Petition for Rehearing En Banc at 11, *Black*, No. 20-3224 (2d Cir. Nov. 20, 2024).

[13] No party appears to be under the same misapprehension as Judge Menashi that *Black* could be read as invalidating § 1226(c). The government did not make any such argument in its request for en banc review. *See* Petition for Rehearing En Banc, *Black*, No. 20-3224 (2d Cir. Nov. 20, 2024). Nor does Judge Nardini, in his dissent from rehearing en banc, challenge the panel's opinion as a wholesale invalidation of the statute.

Moreover, the Supreme Court has long applied the balancing test in *Mathews*, 424 U.S. at 335, as a framework for determining whether individuals—including noncitizens—in government custody have received constitutionally-adequate process. *See, e.g.*, *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (observing that *Mathews* governs evaluation of noncitizen's claim that she was denied due process at exclusion hearing); *cf. Hamdi v. Rumsfeld*, 542 U.S. 507, 528–29 (2004) (applying *Mathews* to assess whether due process entitled enemy combatant to evidentiary hearing). Neither *Zadvydas* nor *Demore* precludes the balancing of interests that was recognized as necessary in *Black*.

Judge Menashi further contends that *Zadvydas* supports his view that prolonged detention without a bond hearing poses no due process concerns as long as "removal is reasonably foreseeable, and the detention has a definite termination point." Menashi Dissent at 13. But *Zadvydas*'s focus on the foreseeability of removal—and its limiting construction of § 1231(a)(6) as authorizing detention only when removal is reasonably foreseeable—does not address or settle the due process concerns raised by prolonged detention under § 1226(c) of noncitizens who are awaiting determinations on their claims for relief, which may take years to resolve. Indeed, whether removal is foreseeable and whether detention has a definite termination point are issues that could be explored at a due process hearing.

Even more troubling is the fact that Judge Menashi's view would strip the judiciary of all power to verify that detention does in fact have a valid rationale and a "definite termination point." While § 1226(c) mandates detention, it is still a civil statute and therefore can only do so to prevent flight or protect the

16

community. *See Zadvydas*, 533 U.S. at 690. Statutory authorization or not, the Constitution demands that there be a point when detention has gone on so long that courts can no longer blindly trust that it remains justified. Judge Menashi's conviction that no such point exists should worry all who recognize, as the Supreme Court long has, that "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha*, 504 U.S. at 80.

Furthermore, if Judge Menashi were correct that the pendency of removal proceedings and the prospect of a future deportation alone were enough to legitimize indefinitely prolonged detention without a hearing, that interpretation would make nonsensical the Supreme Court's focus on "the brief period" for which it approved the extraordinary measure of mandatory preventative detention under § 1226(c). *Demore*, 538 U.S. at 513. Similarly, if the Supreme Court had already decided that mandatory detention under § 1226(c) is always constitutional regardless of duration or circumstances, "the *Jennings* Court would have had no reason to remand to the Ninth Circuit 'to consider . . . in the first instance' the detainees' argument that '[a]bsent . . . a bond-hearing requirement, . . . [section 1226(c)] would violate the Due Process Clause,'" *Black*, 103 F.4th at 149 (quoting *Jennings*, 583 U.S. at 291, 312).

Although we agree with Judge Menashi that individuals have no "liberty or property interest in a discretionary grant of asylum," *Yuen Jin v. Mukasey*, 538 F.3d 143, 157 (2d Cir. 2008), they do have a due process interest in the procedures by which their asylum claims are adjudicated. *See Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (protected interest in procedural fairness for asylum claims);

*Burger v. Gonzales*, 498 F.3d 131, 134 (2d Cir. 2007) (same); *Yuen Jin*, 538 F.3d at 161 n.1 (Sack, *J.*, concurring in part) ("Although asylum is a discretionary form of relief, and the Due Process Clause does not protect benefits that government officials may grant or deny in their discretion, every asylum applicant is nonetheless entitled to due process in establishing her eligibility for that form of relief." (internal quotation marks and citations omitted)). Withholding of removal may not entitle a petitioner to admission to the United States, but the Constitution entitles all individuals to freedom from arbitrary bodily restraint while they exercise their legal rights in this country. Thus, while the Government may be "happy to release [a detainee] . . . in the cabin of a plane bound for his home country," Menashi Dissent at 15 (internal quotation marks omitted), the Government cannot use prolonged detention to force a detainee to relinquish rights that he might otherwise exercise.

Judge Menashi further faults the *Black* panel for "entrench[ing] a split with the Eighth Circuit." Menashi Dissent at 1. But our decision in *Black* was issued *before Banyee*. It brought our Court into alignment with the only other post-*Jennings* decision to address what procedures due process demands following unreasonably prolonged detention without a bond hearing under § 1226(c)—the Third Circuit's decision in *German Santos*—a decision that Judge Menashi does not mention. Meanwhile, *Banyee* failed to meaningfully address its split with our Court and others, dismissing our constitutional holding in *Black* without analysis, in a footnote.

Finally, it is error to conclude, as Judge Menashi does, that prolonged detention under § 1226(c) does not implicate the petitioners' "general interest" in

freedom from imprisonment. Menashi Dissent at 15. In *Zadvydas*, the Supreme Court affirmed that, *even after the conclusion of removal proceedings*, removable noncitizens in the United States have due-process rights and possess a liberty interest in freedom from imprisonment. *See* 533 U.S. at 690–96. In fact, rejecting an argument similar to that raised by Judge Menashi, the Court declined to characterize that liberty interest at issue as the "right to release" into the United States. *Id.* at 696 (internal quotation marks omitted). And although Judge Menashi does not at all engage with *Velasco Lopez*, that precedent clearly recognizes that prolonged detention pending removal proceedings without a bond hearing implicates noncitizens' liberty interest in being free from imprisonment. *See* 978 F.3d at 850–52.

## IV.    Judge Nardini's dissent

Judge Nardini's dissent does not speak to our fundamental holdings that the *Mathews* framework applies to § 1226(c) length-of-detention challenges and that due process may entitle a § 1226(c) detainee to a bond hearing once his or her particular detention becomes "unreasonably prolonged." Rather, his dissent focuses on our conclusion about the burden allocation and evidentiary standard to apply at such a bond hearing. He urges that, where detention under § 1226(c) is "unreasonably prolonged" such that due process entitles a detainee to a remedial bond hearing, the detainee must bear the burden of proof to justify release by a preponderance of the evidence. Yet, Judge Nardini's arguments rely primarily on inapt caselaw analyzing § 1226(a).

At bottom, Judge Nardini fails to acknowledge the significance of differences between the two detention regimes set out separately in § 1226(a) and

§ 1226(c); he misinterprets *Velasco Lopez*; and he misconstrues other Circuits' opinions to find a Circuit split where there is none.

### A. Individuals detained under § 1226(a) and § 1226(c) face markedly different barriers to release.

Judge Nardini argues that, in his view, it is "profoundly wrong to make it no more difficult to obtain release at a bond hearing for § 1226(c) detainees than for § 1226(a) detainees." Nardini Dissent at 29. In our view, there is at best limited equivalence between the respective barriers faced by § 1226(a) and § 1226(c) detainees.

#### 1. § 1226(a)

The opportunities available for § 1226(a) detainees to challenge their detention and seek release are several:

- When a person is apprehended under the authority of § 1226(a), an Immigration and Customs Enforcement ("ICE") officer makes an initial determination about whether to retain that person in custody. *See* 8 C.F.R. § 236.1(c)(8).
- If the officer chooses to continue the person's detention, the person may seek review of that decision at a bond hearing before an IJ. *See id*. § 236.1(d)(1).
- If the IJ decides to continue detention, the person may appeal to the BIA. *See id*. § 236.1(d)(3).
- If the person stays in detention, he may also request additional bond hearings whenever he experiences a material change in circumstances. *See id*. § 1003.19(e).
- He may also appeal the outcome of any of those bond hearings to the BIA. *See id.* § 1003.19(f).

Section 1226(a) and its accompanying regulations are silent as to what burden of proof applies at a bond hearing before an immigration judge and who

bears that burden. For many decades, the BIA interpreted that silence as creating a presumption in favor of a noncitizen's liberty pending removal proceedings. *See Matter of Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976). In the late 1990s, however, the INS adopted regulations establishing a presumption of detention in the arresting officer's initial custody determination for § 1226(a) detainees. *See* 8 C.F.R. § 236.1(c)(2)–(8). Under those regulations, a noncitizen held under § 1226(a) and seeking release bears the burden of "demonstrat[ing] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* § 236.1(c)(8).

Although by its terms that regulation applies only to the initial custody determination by the arresting officer, the BIA soon adopted that standard for § 1226(a) *bond hearings before an IJ* as well, reversing the *Patel* rule. *See Matter of Adeniji*, 22 I. & N. Dec. 1102, 1112 (B.I.A. 1999); *see also Matter of Guerra*, 24 I. & N. Dec. 38, 40 (B.I.A. 2006). Accordingly, the BIA now holds that a noncitizen detained under § 1226(a) must demonstrate "to the satisfaction of the Immigration Judge that he or she merits release on bond," *Matter of Guerra*, 24 I. & N. Dec. at 40, "even though section [1226(a)] does not explicitly contain such a requirement," *Matter of Adeniji*, 22 I. & N. Dec. at 1113. To meet that standard, the noncitizen must show that he or she is neither a danger to the community nor a flight risk. *See, e.g.*, *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 804 (B.I.A. 2020).

As we held in *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020), however, once a § 1226(a) detainee's period of detention after the initial or most recent bond hearing becomes unreasonably prolonged, due process demands an *additional* bond hearing. And at that hearing, we held, the *government* bears the

burden of justifying, by clear and convincing evidence, the detainee's continued detention. Accordingly, regulation, statute, and case law have produced tailored burden-allocation protocols for § 1226(a) detainees that depend on whether the bond hearing is provided (i) *as a matter of course* (in which case the noncitizen bears the burden), or (ii) *as a remedy* for unreasonably prolonged detention (in which case the government bears the burden).

## 2. § 1226(c)

Section 1226(c), on the other hand, carves out a class of noncitizens for whom detention is mandatory. 8 U.S.C. § 1226(c). As Judge Nardini stresses, these individuals include those who have been convicted of certain serious crimes or engaged in certain terrorist activities.[14] But, as Justice Breyer observed, § 1226(c) detainees also include those who "may have been convicted of only minor crimes—for example, minor drug offenses, or crimes of 'moral turpitude' such as illegally downloading music or possessing stolen bus transfers; and they sometimes may be innocent spouses or children of a suspect person." *Nielsen v. Preap*, 586 U.S. 392, 430 (2019) (Breyer, *J.*, dissenting). The statute also makes no mention of the recency of a qualifying conviction or offense or of the date of a person's completion of a sentence for the qualifying crime.

In stark contrast to § 1226(a), and the five bond-related opportunities listed above, § 1226(c) by its terms establishes no express entitlement to a bond hearing

---

[14] For instance, § 1226(c) provides for detention of noncitizens who have "engaged in a terrorist activity," who are "representative[s]" of a "terrorist organization" or "a political, social, or other group that endorses or espouses terrorist activity," and those whom the government "has reasonable ground to believe, is engaged in or is likely to engage after entry in any terrorist activity." 8 U.S.C. §§ 1226(c)(1)(D), 1182(a)(3)(B).

*at any point.*[15] Section 1226(c) detainees have only the hearing that we have now ordered in *Black*, and that is available to them only after a judge has found that their detention has become unreasonably prolonged.[16] And, after our panel decision, § 1226(c) was amended to cover additional categories of noncitizens, including those who have no criminal convictions but have been arrested or charged with certain offenses, including shoplifting, further placing individuals at risk. Within the *Mathews* balancing framework, then, § 1226(c) comes with a significantly higher risk of an erroneous deprivation of rights than § 1226(a).

Glossing over these differences, Judge Nardini would have us hold that the proper burden allocation for a § 1226(c) bond hearing ordered as a *remedy* for unreasonably prolonged detention is the same as that for a detainee at an *initial* § 1226(a) bond hearing: that the noncitizen must demonstrate entitlement to release by a preponderance of the evidence. In support of his position, Judge Nardini points to Third, Fourth, and Ninth Circuit decisions analyzing due process challenges to § 1226(a)—not § 1226(c)—detentions. *See* Nardini Dissent at

---

[15] The only procedural protection in place is the BIA-established *Joseph* hearing, at which noncitizens can contest whether they in fact committed an offense that meets the statutory criteria for § 1226(c) detention. *See Matter of Joseph*, 22 I. & N. Dec. 799 (B.I.A. 1999).

[16] In addition, ICE may "release" a person detained pursuant to § 1226(c) if necessary for witness protection purposes. 8 U.S.C. § 1226(c)(2). As we explained in *Black*, "We read section 1226(c)(2) . . . as having 'nothing to do with bail.'" *Black*, 103 F.4th at 157 (quoting *Jennings*, 583 U.S. at 351 (Breyer, *J.*, dissenting)). "Rather, it concerns 'a special program, the Witness Protection Program, set forth in 18 U.S.C. § 3521,' in which the government would usually be required to detain the noncitizen based on a presumption of dangerousness and flight risk." *Id.* (quoting *Jennings*, 583 U.S. at 351 (Breyer, *J.*, dissenting)).

23.[17] Moreover, in those § 1226(a) cases, the noncitizens had not shown any underlying constitutional violation in their detentions. So it should come as no surprise that those courts declined to shift the burden of proof to the government as a remedy for due process violations that were not present.

Judge Nardini cites to no case in which any Circuit has found that detention under either § 1226(a) or § 1226(c) was unreasonably prolonged and then *declined* to provide the precise bond hearing and burden allocation remedy ordered in *Velasco Lopez* and *Black*. He has identified no case (and we are aware of none) in which any Circuit has determined that a bond hearing using the burden allocation he proposes was deemed an adequate remedy for unreasonably prolonged detention under *either* § 1226(a) or § 1226(c). And meanwhile, the Third Circuit's holding in *German Santos* is wholly in accord with the panel's ruling. On our reading, rehearing this case en banc and deciding as Judge Nardini suggests would not help to resolve any Circuit split; rather, to adopt his position would be to create a Circuit split.

### B. *Black* and *Velasco Lopez* refute Judge Nardini's arguments.

In the panel decision, we considered arguments akin to those now raised by Judge Nardini and rejected them. The government highlighted that *Velasco Lopez* required the government to bear the burden of proof at Velasco Lopez's *third* bond hearing under § 1226(a), not his *initial* bond hearing. Therefore, the

---

[17] Judge Nardini relies principally on *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274 (3d Cir. 2018), *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022), and *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). We discuss these cases in greater depth below.

government argued, § 1226(c) detainees should have to bear the burden of proof at their *first* bond hearing as well.

We rejected this argument as "rooted neither in the text of § 1226 nor in our reasoning in *Velasco Lopez*." 103 F.4th at 157. We explained:

> Both sections 1226(a) and (c) aim to prevent flight and danger to the community. Once those detentions have been unconstitutionally prolonged, the due process analysis adopted in *Velasco Lopez* applies with equal force to both situations. Accepting the government's argument would lead to an asymmetrical, puzzling result: section 1226(a) detainees like Velasco Lopez, who had already received (and did not prevail at) an initial bond hearing, would at future bond hearings be entitled to shift the burden to the government to prove the need for continued detention; section 1226(c) detainees like Black, who never had a similar opportunity to show at an initial hearing that he should be released, would bear the burden of proof.

*Id*. Accordingly, once detention under *either* § 1226(a) or § 1226(c) has become unreasonably prolonged in violation of the Fifth Amendment, due process requires an individualized bond hearing by an IJ at which the government bears the burden to justify continued detention by clear and convincing evidence.

Judge Nardini claims that *Velasco Lopez* placed significant weight on the fact that, unlike § 1226(c) detainees, those detained under "§ 1226(a) . . . include individuals with no criminal record."[18] Nardini Dissent at 13 (quoting *Velasco Lopez*, 978 F.3d at 854). He argues that, based on that distinction between

---

[18] As discussed above, even under the pre-amendment version of § 1226(c), § 1226(c) detainees included individuals without any criminal conviction. *Preap*, 586 U.S. at 430 (Breyer, *J.*, dissenting).

25

§ 1226(a) and § 1226(c) detainees, *Velasco Lopez* concluded that § 1226(a) detainees "must be afforded process in addition to that provided by the ordinary bail hearing." *Id*. at 13–14 (quoting *Velasco Lopez*, 978 F.3d at 854). But Judge Nardini's quotation from *Velasco Lopez* is incomplete, as the Court made clear in *Velasco Lopez* that § 1226(a) detainees "must be afforded process in addition to that provided by the ordinary bail hearing, *just as the Supreme Court in Demore has suggested criminals subjected to prolonged detention under § 1226(c) may be entitled to further process*." *Velasco Lopez*, 978 F.3d at 854 (emphasis added).

In Judge Nardini's view, the *Black* panel fundamentally erred by extending the *Velasco Lopez* remedy to § 1226(c) detainees, because "it is the *category of noncitizens* at issue that principally matters for our due process analysis, not the timing of the hearing along the detention continuum." Nardini Dissent at 26. As his only support, he cites an observation made by a Ninth Circuit panel in *Rodriguez Diaz*, which noted that, under a now-overruled Ninth Circuit decision, "aliens who [were] detained under § 1226(c) bec[a]me detained under § 1226(a) once the BIA issue[d] a final order of removal and the alien file[d] a petition for review in federal court." *Rodriguez Diaz*, 53 F.4th at 1201. *Rodriguez Diaz* recounted that *Jennings* overruled that scheme by holding that "§§ 1226(a) and (c) apply to discrete categories of noncitizens—and *not* to different stages of a noncitizen's legal proceedings." *Id*. (internal quotation marks omitted). Judge Nardini mistakes this proposition as support for his assertion that § 1226(c) detainees whose due process rights have been violated deserve a lesser remedy than § 1226(a) detainees whose due process rights have been violated. Additionally, the *Mathews* test accounts for multiple factors, not just

one. While the "category of noncitizens" may affect the government's interest in detention, the fact that § 1226(c) affords those noncitizens none of the procedural protections available under § 1226(a) substantially increases the risk of error.[19] The approach the panel adopted—guaranteeing a bond hearing at which the government bears the burden of proof, but only once detention has already become unduly prolonged—strikes the right balance between these competing interests.

Judge Nardini further posits that "the panel opinion has effectively decreed that Congress has no power to set a standard that demands more of a noncitizen who has been convicted of a qualifying crime, or who poses a national security risk." Nardini Dissent at 3–4. Our response is that of the Supreme Court: "[i]n the enforcement of [immigration] policies," still "the Government must respect the procedural safeguards of due process." *Galvan v. Press*, 347 U.S. 522, 531 (1954). "It is axiomatic, moreover, that when Congress enacts a statut[e] . . . , basic procedural due process protections attach." *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153, 2162 (2025) (Sotomayor, *J.*, dissenting) (citing *Mathews*, 424 U.S. at 332). As the Supreme Court has recently reaffirmed, courts' recognition of "the significance of the Government's national security interests" neither eliminates nor reduces "the necessity that such interests be pursued in a manner consistent with the Constitution." *A.A.R.P. v. Trump*, 605 U.S. 91, 96 (2025).

---

[19] One might also argue that the "category of noncitizens" affects the risk of error, since those convicted of serious crimes might be deemed more likely to flee or pose a danger to the community. Since § 1226(c) has now been extended to those convicted of or even simply charged with petty crimes, including shoplifting, this argument carries substantially less weight. *See supra* note 5.

Judge Nardini provides no rationale for how a properly conducted *Mathews* analysis could result in a burden allocation requiring § 1226(c) detainees whose due process rights have been violated by unreasonably prolonged detention to bear the burden of justifying their release.[20] That Congress singled out people with certain criminal histories for detention under § 1226(c) does not change the fact that the government cannot articulate any interest in prolonged detention of individuals whom it cannot show, on an *individualized* basis, are dangerous or flight risks.

### C. There is no relevant Circuit split on *Black*'s burden allocation holding.

Judge Nardini claims that our Sister Circuits' treatment of the procedural protections owed to those detained under §§ 1226(a) and (c) have resulted in "intercircuit incoherence" and "all-over-the-map holdings [that] present more than the usual circuit split." Nardini Dissent at 5–6. He reaches that flawed conclusion by failing to recognize important differences among cases, including what claims were raised and what issues the courts reached. First, there is no Circuit split regarding *Black*'s burden allocation. Second, the § 1226(a) cases on which Judge Nardini relies are easily distinguishable from *Velasco Lopez* and *Black* and provide no reason to reconsider our § 1226(c) ruling. Here, we aim to clarify those important differences, which Judge Nardini overlooks.

---

[20] Judge Nardini claims incorrectly that *Black*'s holding as to the burden allocation treated "the second *Mathews* factor [a]s dispositive." Nardini Dissent at 15. In fact, the relevant section of the *Black* opinion states that: "Our analysis above of the first and third factors applies with equal force to these questions [concerning the burden allocation and the district court's order that the IJ consider Black's ability to pay and alternatives to detention]," and we proceeded to "elaborate briefly on the second *Mathews* factor." *Black*, 103 F.4th at 155.

> **1.** ***Black*** **is consistent with the decision of the only other Circuit to reach the burden-allocation issue.**

After *Jennings*, only one other Circuit has addressed what due process requires to address unreasonably prolonged detention under § 1226(c). In *German Santos*, the Third Circuit held—just as we did in *Black*—that, once detention under § 1226(c) becomes unconstitutionally prolonged, due process requires a bond hearing at which "the [g]overnment must justify [a detainee's] continued detention by clear and convincing evidence." 965 F.3d at 206; *see also Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233 (3d Cir. 2011) (same), *vacated in part by Jennings*, 583 U.S. 281 (see *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018)).

> **2.** **The § 1226(a) decisions of other Circuits did not address the question presented in *Black* and on which Judge Nardini sought en banc review.**

Judge Nardini asserts that the "Third, Fourth, and Ninth Circuits . . . have held that due process does not require shifting the burden from the noncitizen to the government in a § 1226(a) bond hearing." Nardini Dissent at 23 (citing *Borbot*, 906 F.3d 274, *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022), and *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022)). But the noncitizens in those cases failed to show any underlying constitutional violation in their detentions. So it is no surprise that those courts declined to shift the burden of proof to the government as a remedy for due process violations that were not present.

Moreover, none of the out-of-Circuit § 1226(a) decisions that Judge Nardini cites squarely confronted the issue on which he sought rehearing en banc in *Black*: what remedy does due process demand upon a finding of unreasonably

prolonged detention?[21] Indeed, none of those cases held anything about what procedures would be required to remedy unreasonably prolonged detention under § 1226(a). The Third Circuit left for another day the question "when, if ever, the Due Process Clause might entitle an alien detained under § 1226(a) to a new bond hearing." *Borbot*, 906 F.3d at 280. The Fourth Circuit was not presented with any claim of unreasonably prolonged detention. *Miranda*, 34 F.4th at 346. And the Ninth Circuit had "no occasion to consider the constitutional limits of prolonged immigration detention because [petitioner] ha[d] not demonstrated a due process violation." *Rodriguez Diaz*, 53 F.4th at 1214. *See also Hernandez-Lara v. Lyons*, 10 F.4th 19, 25 n.2, 30 n.4 (1st Cir. 2021) (declining to reach petitioner's claim that her unreasonably prolonged detention entitled her to a new bond hearing at which the government bore the burden of proof).

Judge Nardini's analysis of § 1226(a) caselaw fails to distinguish between those courts' assessments of challenges to the procedures at *statutorily required* bond hearings under § 1226(a) and claims of *unreasonably prolonged detention* warranting a *new* bond hearing with a shifted burden. In any event, we unpack those issues here.

---

[21] The decisions that Judge Nardini cites agree on a key underlying principle: where a noncitizen detainee demonstrates a due process violation, the *Mathews* factors apply to determine what process is due. *See Rodriguez Diaz*, 53 F.4th at 1203–07 (collecting cases applying *Mathews* and assuming without deciding that *Mathews* applied to petitioner); *Miranda*, 34 F.4th at 358 (applying *Mathews*); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27–28, 41 (1st Cir. 2021) (same); *German Santos*, 965 F.3d at 213 (same). *Borbot* did not discuss *Mathews*, but, as discussed below, the petitioner there failed to demonstrate a due process violation. 906 F.3d at 280.

a. **Several Circuits have addressed the burden of proof at statutorily required § 1226(a) bond hearings, and none conflicts with *Black*.**

As discussed, the texts of § 1226(a) and its accompanying regulations are silent as to who bears the burden of proof at a bond hearing before an IJ. BIA precedent, however, places the burden on the noncitizen. *Matter of Guerra*, 24 I. & N. Dec. at 40; 8 C.F.R. § 236.1(c)(8). Neither *Black* nor *Velasco Lopez* casts doubt on that procedure.

The Fourth Circuit in *Miranda* and the Ninth Circuit in *Rodriguez Diaz* upheld existing BIA precedent placing the burden on detainees at ordinary § 1226(a) bond hearings that are convened as a matter of course under § 1226(a)'s related regulation. *Miranda*, 34 F.4th at 346 (rejecting due process challenge to the burden allocation at § 1226(a) bond hearings governed by BIA precedent, finding that the noncitizens "are unable to establish a likelihood of success on their due process claims"); *Rodriguez Diaz*, 53 F.4th at 1210, 1212 (rejecting challenge that § 1226(a) detainee "should not have borne the burden of proof at his initial bond hearing," concluding that "[n]othing in this record suggests that placing the burden of proof on the government was constitutionally necessary to minimize the risk of error").

The First Circuit's holding in *Hernandez-Lara*, 10 F.4th 19, *does* conflict with the Fourth and Ninth Circuit decisions, but not in any way that implicates our holding in *Black*. In *Hernandez-Lara*, after the petitioner failed to meet her burden at an initial bond hearing under § 1226(a), she filed a habeas petition arguing that (i) her initial bond hearing was constitutionally inadequate because she was made to bear the burden of proof, and (ii) her prolonged detention violated due

31

process and thus an additional bond hearing was warranted, at which the government must bear the burden of proof. The First Circuit addressed the first argument and declined to address the second. *Id.* at 25 n.2, 30 n.4. As to the *initial* § 1226(a) bond hearing, the First Circuit took the position that "due process requires the government to either (1) prove by clear and convincing evidence that she poses a danger to the community or (2) prove by a preponderance of the evidence that she poses a flight risk." *Id.* at 41.

Nothing about this conflict warrants reconsidering our holding in *Black* on unreasonably prolonged detention under § 1226(c) without a bond hearing. The First Circuit's split with other Circuits on the proper burden allocations for statutorily required § 1226(a) bond hearings would exist regardless of *Black* and *Velasco Lopez*.

> **b. Other Circuits have not squarely addressed the burden of proof at bond hearings required as a remedy for unreasonably prolonged detention under § 1226(a).**

The decisions on which Judge Nardini relies say very little about unreasonably prolonged detention, at issue in *Black* and *Velasco Lopez*: Prolonged detention was not before the Fourth Circuit in *Miranda*. The First Circuit declined to address Hernandez-Lara's prolonged detention claim. *Hernandez-Lara*, 10 F.4th at 25 n.2, 30 n.4.[22] And the Ninth Circuit in *Rodriguez Diaz* had "no occasion to

---

[22] The Ninth Circuit in *Rodriguez Diaz* incorrectly characterized *Hernandez-Lara* as addressing the bond allocation procedures required upon "prolonged" detention under § 1226(a). *Rodriguez Diaz*, 53 F.4th at 1204. The *Hernandez-Lara* Court did "find the potential length of detention under section 1226(a) relevant to the weight of the liberty interest at stake" when determining what *initial* procedures were required, but declined to reach the argument that, once detention became unreasonably prolonged, Hernandez-Lara was entitled to a new bond hearing at which the government would bear the burden of proof. 10 F.4th at 30 n.4.

consider the constitutional limits of prolonged immigration detention because Rodriguez Diaz ha[d] not demonstrated a due process violation." 53 F.4th at 1214.

Judge Nardini contends that the differing outcomes in the Third Circuit's decisions in *Borbot* and *German Santos* warrant rehearing in *Black*. Nardini Dissent at 27–29. But he overlooks fundamental differences that demonstrate the consistency between these two cases. *German Santos* involved detention under § 1226(c) that became unreasonably prolonged in violation of the Fifth Amendment; *Borbot*, in contrast, involved detention under § 1226(a) that the Third Circuit expressly determined had *not* become unreasonably prolonged. *See Borbot*, 906 F.3d at 279–80. The sole basis of Borbot's due process challenge was the duration of that detention after his initial hearing was conducted.[23] Having found it was not overlong, the Third Circuit had little difficulty rejecting Borbot's argument that the burden must shift to the government in such a second hypothetical bond hearing under § 1226(a). Indeed, Borbot was not entitled to a new bond hearing at all. That § 1226(c) detainees were entitled under Third Circuit precedent to shift the burden at bond hearings following unreasonably prolonged detention, *id.* at 279, was of no moment in the context of Borbot's

---

[23] Judge Nardini contends that "[o]ne might argue that [*Borbot*] addressed due process requirements only for the *initial* bond hearing, not for a hearing once the detention has become unreasonably prolonged," and "any attempt to cabin *Borbot* to initial § 1226(a) hearings would be unpersuasive." Nardini Dissent at 24–25. But Borbot did not advance any argument that he was denied due process in his initial § 1226(a) hearing. *See Borbot*, 906 F.3d at 279 ("Borbot's habeas petition seeks to compel a *second* bond hearing *despite alleging no constitutional defect in the one he received*." (emphasis added)). The Third Circuit thus issued no holding on that question.

claims: as the *Borbot* Court explained, habeas petitioners detained under § 1226(c) are "not situated similarly" to § 1226(a) detainees. *See id.*

Accordingly, aside from *German Santos*, none of the cases Judge Nardini cites answers the question posed by *Velasco Lopez* and *Black*: when detention under either § 1226(a) or § 1226(c) has become unreasonably prolonged, what process does the Constitution require? Meanwhile, Judge Nardini overlooks case law that guides us to view an individual's liberty interest in freedom from detention on a continuum, with the amount of process necessary to protect that liberty interest increasing over time. And indeed, a standard of proof "serves to allocate the risk of error between the litigants" and reflects the "relative importance attached to the ultimate decision." *Addington v. Texas*, 441 U.S. 418, 423 (1979). The Supreme Court has repeatedly reaffirmed the principle that "due process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake . . . are both particularly important and more substantial than mere loss of money." *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) (internal quotation marks omitted). And the Supreme Court has recognized that when confinement becomes prolonged, due process requires enhanced protections to ensure detention remains reasonable in relation to its purpose. *See Zadvydas*, 533 U.S. at 701 ("[F]or detention to remain reasonable," greater justification is needed "as the period of . . . confinement grows."). *Black* does no more than implement these principles.

## V.    CONCLUSION

In sum, *Black* was correctly decided and the Court appropriately denied the petition for rehearing en banc. Judge Menashi's dissent relies on

misconceptions about the panel's holding and misapprehensions about the Supreme Court's rulings, none of which are shared by any party to this case. Rehearing en banc is also correctly denied because arguments advanced now by Judge Menashi were not raised or developed by any party, either in the initial appeal or in the petition for rehearing. Even if this Court were to adopt his ill-formed views, that would not cure the split created by the Eighth Circuit's deeply flawed reasoning in *Banyee*. *Black* is wholly in accord with the only other Circuit to address what bond hearing procedures are constitutionally required to remedy unreasonably prolonged detention under § 1226(c). *See German Santos*, 965 F.3d 203.

Judge Nardini's dissent likewise misapprehends the significance of the differences between the detention regimes set out in § 1226(a) and § 1226(c), the reasoning of *Velasco Lopez*, and the import of other Circuits' treatment of challenges to § 1226(a) detention. His dissent also fails to distinguish between challenges to the procedures governing § 1226(a) bond hearings that are provided as a matter of course and challenges to unreasonably prolonged detention that seek a *new* bond hearing with a shifted burden.

The burden allocation in *Black* was the product of a careful *Mathews* analysis and was designed to remedy the due process violation resulting from unreasonably prolonged detention under § 1226(c). Without meaningfully engaging with that *Mathews* analysis, Judge Nardini asserts that he would prefer that the remedial bond hearing burden allocation ordered in *Black* be the same as the burden allocation for § 1226(a) hearings convened as a matter of course. But the different burden allocations in these two situations, as *Velasco Lopez* and *Black*

explained, is warranted precisely because the balance of interests under the *Mathews* framework shifts once detention becomes unreasonably prolonged. What may be adequate at the outset of detention becomes inadequate when detention has become unreasonably prolonged.

We emphasize that § 1226(c) has been amended since our decision in *Black*. Under the new law, additional categories of noncitizens without any criminal conviction are now subject to mandatory detention as "criminal aliens." Now, for instance, a noncitizen who "is charged with" or "arrested for" "any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense" "shall" be detained under § 1226(c). 8 U.S.C. § 1226(c)(1)(E)(ii). Judge Nardini states that he does not "believe that the amendments provide support for the Court's decision to abstain from rehearing," and that "our *en banc* Court would not have been called upon to express a view on the revised statute because these two petitioners [in *Black*] were convicted of crimes covered by the prior version." Nardini Dissent at 32. We are not persuaded. The new breadth of § 1226(c) may call for new considerations better left to a future panel, and convening en banc here might well confuse the issues.

For all of these reasons, a majority of the active judges of this Court correctly concluded that this case did not warrant en banc review.